IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 4:09CR00509-4 JCH |
| ) | |
| BRENT DOUGLAS CASSITY, ) | |
| ) | |
| Defendant. ) | |

**AMENDED OBJECTIONS
TO PRESENTENCE INVESTIGATION REPORT**

COMES NOW, Defendant Brent D. Cassity by and through counsel, Richard H. Sindel and Susan S. Kister, and files his Amended Objections to the Presentence Investigation Report. Defendant submits that the only change made to his original Objections to Presentence Investigation Report pertains to the striking of language from Paragraph 1, and that all other objections remain identical to those contained in his original Objections. For the sake of convenience, and to minimize confusion, Defendant includes all of his original objections in their original form, within the instant pleading.

1.      Defendant objects to Paragraphs 17, 78, 79, 81, and 91 of the Presentence Investigation Report to the extent that these paragraphs reflect that the total amount of loss caused by the scheme to defraud was at or near $512,000,000.

2.      Defendant objects to Paragraphs 17, 78, 79, 81, and 92 of the Presentence Investigation Report insofar as it reflects that the number of victims of the scheme to defraud was over 97,000, including 97,783 individual NPS customers and 44 state guarantee associations, as this number overstates the number of victims in the case.

3.      Defendant objects to Paragraph 24 of the Presentence Investigation Report to the extent that it reflects that Defendant's senior management responsibilities related to or included finances. Defendant submits that from the time he became employed at NPS in 1989, until June of 2007 when he was asked by NPS senior management to address allegations of impropriety by insurance officials in Ohio and further, to meet with Texas insurance officials to attempt to stave off liquidation, his duties and responsibilities at NPS were confined to sales, early on as a seller of preneed contracts and later, as the person in charge of the sales force at large. Defendant's area of expertise was at all times sales and marketing, and he has no background, experience or training in finances or insurance.

4.      Defendant objects to Paragraphs 78 and 79 of the Presentence Investigation Report to the extent that these paragraphs reflect that the full amount of $271,546,396 paid by the 44 state guarantee associations on 106,350 claims should be included in the total loss amount attributable to NPS. Defendant submits that a portion of the $271,546,396 paid out by the guarantee associations included monies paid into the associations by LMLIC which were to be retained or reserved by the associations to fund funerals in the event NPS became unable to fund the funerals itself.  Defendant submits that the monies paid to the associations by LMLIC for the specified purpose of funding funerals in the event of default, liquidation, or any other untoward event (also known as "incurred but not reported losses"), less fees and dues paid to the associations as the cost of doing business in each state, represent the amount of actual loss sustained by the guarantee associations.

5.      Defendant objects to Paragraph 40 of the Presentence Investigation Report to the extent that it reflects that the policy loans taken by him and the other defendants were "unauthorized." Defendant submits that at least during the period of monitoring by the Boone

2

County Circuit Court, loans taken on policies were done with the knowledge and approval of the monitor under the Boone County Consent Judgment. Defendant further submits that up until the time that NPS, LMLIC, and MSLIC were ordered into receivership, every funeral was paid for; every burial was carried out; and every contract was honored.

6. Defendant objects to Paragraph 30 of the Presentence Investigation Report to the extent that it suggests that NPS, LMLIC, and MSLIC operated a "Ponzi-like" scheme because they collected money from present premiums or deposits and used them to pay off older obligations when and if the insurance event occurred. The reality is that many businesses, including insurance companies, rely on money generated from new sales to pay obligations on prior debts.

7. Defendant objects to Paragraphs 30 and 31 of the Presentence Investigation Report to the extent these paragraphs use the term "misappropriated" to describe the withdrawal of funds from the bank trust. While it is true that money was taken from the trusts at various times, the Defendant does not believe that these withdrawals should be characterized as "misappropriation."

8. Defendant objects to Paragraph 32 through 38, and 40, in that he denies that his actions violated the terms of the Consent Judgment or any other judicial order. From 1994 to 2000, the activities of NPS were reviewed by a court-approved monitor, Robert Lock. Lock had access to the records of the banks, NPS, and all other relevant entities for his review. At no time did he suggest to the court of to the Missouri Attorney General that NPS or the other entities were in violation of the Consent Judgment. Use of terminology such as "unauthorized" in Paragraph 36, "misrepresentations" in Paragraph 37, and "concealed" in Paragraph 38 are inconsistent with the findings on the monitor and of the circuit court when it entered its order in

3

May of 2000 finding that NPS was in compliance with the terms of the Consent Judgment and that the monitoring could cease. While the Missouri Attorney General, the Boone County Circuit Court, and Lock were monitoring and reviewing NPS activities, the company took out policy loans and replaced whole life policies with term policies. No one objected or suggested that these actions violated the terms of the Decree. Furthermore, there is no evidence that this Defendant had anything to do with the hiring or retention of David Wulf. There is no evidence that he ever directed Wulf to take any actions that would violate his role as an independent investment advisor.

9. Defendant objects to Paragraph 93 of the Presentence Investigation Report and specifically to the application of a 2-level enhancement for violation of a court order (the Boone County Consent Judgment), as NPS, as the object of the Consent Judgment, was at no time "an entity which defendant controlled," as provided by Application Note 5(C) to U.S.S.G. §2B1.1.

WHEREFORE, Defendant prays this Court sustain his objections to the Presentence Investigation Report.

Respectfully submitted,

/s/Richard H. Sindel
RICHARD H. SINDEL, #23406MO
8000 Maryland Avenue
Suite 350
St. Louis, Missouri 63105
Telephone:  (314) 721-6040
E-Mail:  rsindel@sindellaw.com

/s/Susan S. Kister
SUSAN S. KISTER, #37328MO
809 Forest Trace Drive
Chesterfield, MO 63017
Telephone:  (314) 616-0311
E-Mail:  skister@kisterlaw.com

4

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 29th day of October, 2013 the foregoing was electronically filed with the Court Clerk to be served by operation of the Court's electronic filing system upon all attorneys of record, and that a copy was served by email upon the following:

Ryan D. Wilke
Senior U.S. Probation Officer
111 South 10th Street Suite 2.325
St. Louis, Missouri 63102

               */s/Susan S. Kister*
               SUSAN S. KISTER, #37328MO